I believe that brings us to Erickson v. First Advantage Background Services. We'll hear from Mr. Soumoulis first. Am I pronouncing that correctly? Good morning, Judge Grant. I pronounce it Soumoulis. Soumoulis, thank you. You've got 11 minutes and you've reserved four minutes for rebuttal, Mr. Soumoulis. Thank you, Judge Grant, and may it please the court, I first wish to pandemic. My client, the appellant here, Mr. Erickson, appreciates every opportunity to try to persuade this court that it is not, not accurate under the Federal Fair Credit Reporting Act or FCRA for a background screener such as First Advantage to place a sex offender record on one individual's report when all of the information conclusively shows that the sex offender was a is patently inaccurate. The district court here therefore erred when it ruled that First Advantage's reporting was accurate as a matter of law and took the case away from the jury in the middle of trial. The evidence conclusively showed that the sex offender record was not accurate. At the time, in April 2016, when the report was prepared, it was clear from First Advantage that Mr. Erickson, my client, had no criminal history at all. Mr. Erickson had a... This is Judge Axton. Can I interrupt? Of course, Your Honor. I have a preliminary question for you. I noted in your complaint that you alleged that Mr. Erickson was injured by the failure to, or the inability to coach his son's Little League team. And in trial, he testified that he suffered emotional damage as a result of the fear that people would learn that his father was a sex offender. How does FICRA cause this injury? What is his injury in this case? And how can it be redressed through FICRA? Yes, Judge Axton. Judge, the Fair Credit Reporting Act, as we've laid out in our brief, permits the recovery of actual damages for reputational harm and emotional distress harm. The communication of that inaccurate sex offender record to Little League is the triggering effect of the damages. Because once that communication was made, and it was sent to his home as well, where Mr. Erickson saw the report and saw the suffered emotional distress corroborated by his wife, corroborated by the documents which showed what was reported, and additionally, his reputation was harmed. At common law, calling someone a criminal is defamation per se. There are even further protections under the Fair Credit Reporting Act. So there's no question that the harm was caused by the reports here. But if there's any question on causation, Your Honor, those issues are for the jury. The Kaelin decision from this circuit, the Bok decision from the Sixth Circuit, the Fielding decision from the Third Circuit, all tell us that it is for a jury to decide whether the dissemination of an inaccurate report is the causal factor in that harm. It's not a question of law to be decided by the court. Judge Grant, given the disclaimers on the report that this is only a name only search and that it may not be the person who the report is seeking information about, is there anything that you would say that is technically inaccurate about this report? Well, Your Honor, in our view, the report is patently inaccurate. There is nothing technically accurate about it because it does not concern Mr. Erikson in any way. So therefore, it's not a case like Pedro at all. The disclaimers do not turn the inaccurate report into an accurate report. In fact, they confirm that the information may very well have been not pertained to Mr. Erikson. But, sir, again, Judge Axson, what is inaccurate about saying you share the same name as a sex offender, which is all the court states, right? Well, so, Your Honor, that is the key question on the liability phase of this appeal because the Section 1681BB provides not only must the information have the maximum level of accuracy, but the information, quote, must be concerning the individual about whom the report relates, end quote. And that sex offender record does not concern Mr. Erikson's eligibility to coach, his reputation, his character, or anything at all about him. There are many, many things that are true in the world. There are many things that are true about a person's name, Keith Dodson, whether they committed a crime, filed a bankruptcy, have a tax lien lodged against them. But those true items of information have no place at all on a background report under the Fair Credit Reporting Act because those items of information do not concern the individual about whom the report relates. And the law here is absolutely— Wasn't this report very clear that this information, in fact, may not be about the individual that Little League was seeking the report for? Mm-hmm. So, Your Honor, I wouldn't say that the report was very clear on that point. The report said on its very first page that it was prepared, the entire report says it was prepared using Social Security number, date of birth, name, and address. The report, the copy of the report that Mr. Erikson received at his home about the same offense had his Social Security number immediately next to his name. We think that's not at all clear that he is not identified as the perpetrator. Moreover, I think the report has material omissions in it that make it very misleading. It says that there is no photograph available for the sex offender, while the evidence in this case— Well, I noticed you went on to misleading, but I wanted to stick for a moment with technical accuracy and go back to my colleague's question to you. What is it about this report that was not technically accurate? It correctly noted that there was a name-only match for Erikson, no more, no less, and it had the qualifier that, before you can rely on it, you best do a whole lot more study and search. All they claimed was the name match. That was literally and technically correct, wasn't it? So, Your Honor, the answer to that question is that we don't believe that this is a case like Pedro where you even address the issue of technical accuracy because you begin with the statute, and the statute requires information concerning the individual who is the subject of the report. Where there is a link between the information on the report and that individual, then you turn to the question of, even though the information is technically accurate, could it still be misleading or incomplete? You could be right that it's misleading. I'm just asking you whether or not it's technically accurate. So, I would not call this information technically accurate. Why not? Because it bears no relation to the subject of the report. Placing a completely false crime on a different individual's report can never be technically accurate when all of the evidence, as in this case, conclusively shows that he is not that individual. What about the fact that page 19 says, this record is matched by first name, last name only, and may not belong to your subject. Your further review of state sex offender website is required to determine if this is your subject. Yes, Judge Grant, I think that gets us back to the disclaimer issue. And I think two minutes remain. First, on the issue of the disclaimer, all the authority, including from the Third Circuit that we cited, the Second Circuit that we cited, and courts within the Northern District of Georgia provide that a business cannot water down the application of federal law, the standard of maximum possible accuracy, by placing a disclaimer on the front or the back of a report indicating that it will not follow that standard or that its private contractual arrangements with its clients allow it or there's a marketplace for that standard not to be followed. Moreover, the disclaimer in our view supports our view that from a factual point of view, it confirms that this is not an accurate report. It says right on its face that it may not relate to Mr. Erickson. And in fact, it doesn't, which is what makes it patently inaccurate under the FCRA, Your Honors. And I believe that decision by the district court that as a matter of law, the information is accurate, is incorrect under this circuit's decision in Kaling and the circuit decisions of many other circuits that we cited in our brief at page 17, and that decision should be reversed. Thank you, Mr. Similis. Ms. McDonald? Yes, Your Honors. This is Esther McDonald for the appellant for Susanna's Background Services Corporation. As Your Honors noted, the principal question here is whether the report was accurate. The district court granted judgment as a matter of law after finding that the report was both and not misleading based on the evidence presented. It is undisputed that Mr. Erickson's first and last name at the time matched the first and last name of his father, who was a registered sex offender. The report clearly states that this is a first and last name match only and that it may not belong to Mr. Erickson. Under Pedro, a statement is if it is not false. So therefore, under binding precedent, the report is technically accurate. Those statements are not false. The plaintiff does not dispute that at the time, his first and last name matched his father's first and last name. But Ms. McDonald, if we adopt a rule that disclaimers like this one can ensure the report is not misleading, wouldn't consumer protection agencies simply start adding disclaimers to all of their reports, whether large or small or here or there? Doesn't this provide an end run around what FCRA is really trying to provide? No, Your Honor, it does not. That is because, first of all, generally, businesses want to know whether a record belongs to somebody. In this case, Little League did not. Little League was concerned with protecting children and wanted to be absolutely certain that it had cast a broad net to catch any potential sex offenders. So it wanted a name only search so that it could then do its own due diligence to determine whether somebody was a sex offender. As introduced at Matt O'Connor's testimony, this name only search was unique to Little League and not provided to other customers. And again, that's because other customers don't want name only searches. They want to know whether a record matches somebody. And again, what we're talking about here with the name only match initially is technical accuracy. And so when it comes to misleading, the fact that a report states that something is a first and last name match only or provides other statements, depending on the context, may not necessarily preclude the report from being misleading. Here it did because the undisputed testimony at trial was that Little League had requested name only reports. It understood that it was receiving name only search results. And there was no adverse action taken against the plaintiff. The plaintiff had been coaching his son's Little League team. He was never instructed that he could no longer coach after the background report was returned. And in fact, he testified that nobody ever said anything to him about the background report. In fact, he didn't know if anybody had ever even seen it. He himself had not seen it until trial. And so again, here the evidence was undisputed that there was no misleading. There was no evidence whatsoever that this report was either subjectively or objectively misleading. Now, in the other cases that Mr. Sumolist cites, in those cases, it was either undisputed by the defendant that the report was inaccurate or misleading, or the plaintiff in that case had alleged or proven that the user was in fact misled. So in those cases, you had situations where, for instance, a plaintiff may have had someone else's record. Judge Marcus Counsel, I take it you agree. The standard is an objective one. That is, can the report be expected to adversely affect the recipient of the report? Can it reasonably be expected to affect the recipient? That's what we're looking at, right? I would tweak that slightly, Your Honor, that the misleading is whether it's materially misleading in such a way and to such an extent as to adversely affect decision making of the user. Okay, so the user here is the Little League. They obviously wanted to know who it was that they were going to allow to coach Little League baseball. Couldn't a jury find reasonably that this information is likely to mislead? It certainly doesn't do it categorically. It's not dispositive. But couldn't a reasonable recipient of the information say, the names match up. Therefore, it's likely that this guy is a sex offender. It isn't categorical. It isn't proof beyond a reasonable doubt. It isn't by clear and convincing evidence. But it looks like a pretty good bet that this guy is a sex offender. Now, maybe we should go a step further and check it out. But insofar as we have this information, this guy is probably a sex offender because bingo, the name matches up. Why isn't that enough to say that it can be a decision of this kind made by Little League whether to allow this man to coach or not? Because the evidence of the trial showed that Little League understood that they were named matches only and that it had to and in fact did conduct additional review. And so it could not be objectively misleading to somebody in Little League's shoes. And in fact, there was no evidence at trial. Help me understand the evidence that was elicited at trial on this point. Did Little League go a step further? If so, what does the evidence show that it did? The evidence showed through Mr. O'Connor's testimony that Little League had contracted specifically for these name only search results and wanted those to do its own due diligence and check the results itself. Mr. O'Connor's testimony was that Little League understood that it could not assume a match based on a first and last name only. And again, we see from Mr. Erickson's testimony at trial that the only reasonable inference is that that is what occurred here. I'm sorry, I don't think I made my question clear. Did Little League in this case do diligence and go further or not? In this case, they did. However, Mr. Erickson chose not to call Little League's witness at trial. I'm just asking what's actually in the record evidence in the case. Is there record evidence that Little League didn't simply rely on the name only match? It did due diligence, it went further, and it discerned that this guy was not the guy who was the sex offender. Did they do that? That is a reasonable inference from the evidence presented at trial, Your Honor, yes. Because Mr. Erickson testified that he had been coaching for Little League, that as a condition of his coaching that he was required to get a background check to ensure that he was not a registered sex offender. His background check was conducted, it was completed, and he was never told to cease coaching. And so the only reasonable inference is that Little League reviewed the background check, determined that he was not a sex offender, and moved on. Ms. McDonald, this is Judge Axton. Isn't it true that the application to be a coach itself suggests the possibility that the name only search would uncover what I would refer to as a false positive? That it says that it may result in a report that may or may not be the applicant? Yes, Your Honor. The application that he signed says that he gives permission for Little League to conduct background checks on him, which may include a review of sex offender registries, and which may contain name only searches, which may result in a report being generated that may or may not be me. And so Mr. Erickson testified at trial that he signed that application. He signed that application knowing that his father was a registered sex offender with the same first and to these results. And therefore, frankly, he cannot now turn around and claim to be injured by the very information that he consented to being provided to Little League. And so for that reason, independent of the other reasons, we believe the judgment should be affirmed because he consented and provided a release as well to any damages arising from that information. But if we may continue, Mr. Erickson, instead of disputing the accuracy of the information or the misleading nature of the information, instead he focuses on saying that you determine an accuracy not by whether a statement is true or false and not by whether it's misleading or not, but by whether you've placed someone else's record on a consumer report. But Section 1681EB is not about what information may or may not be included in a report. It's about accuracy and it's about reasonable procedures to ensure the accuracy of information concerning the consumer. Now to his point that the only information about the consumer may be on a report, here he is conflating accuracy with information about the consumer. And those are separate requirements as he himself acknowledged in his argument. But again, if we may point out, this concerning language is nothing new. Section 1681EB arises out of the background of defamation law. The FCRA was enacted to preempt in most instances claims of defamation under state law and instead the FCRA provided a national statute that regulated consumer reporting agencies and provided remedies for consumers. And under defamation law, it's long been recognized that to prevail, a plaintiff must identify a false and defamatory statement concerning the plaintiff. And so that's where that comes from. This is Judge Grant and I'm sorry if I interrupted a two-minute warning. Under your consent argument, dovetailing with the defamation point you're making now, could someone actually consent to be defamed? Yes, Your Honor. Historically, under the law, consent was a defense because another element of defamation law was that you had to identify an unprivileged communication. So not only did the communication have to be false and defamatory about the plaintiff, but it also had to be unprivileged. And a statement was privileged if there was consent to make that statement. Wouldn't that give groups or corporations a pretty easy way around the statute also to merely, let's say someone wants to coach Little League and this is the only way to do it and say, you consent to whatever we kind of find out about you, however inaccurate it is, you consent to that process so we don't have to worry about FCRA. Is that what you're suggesting with your And again, here, we don't even need, the court doesn't need to reach consent. Here, this was a truthful, non-misleading statement. And the court can affirm the judgment, both on the ground that the report was accurate, it was truthful and not materially misleading, or on the ground that plaintiffs failed to show any damages arising from an inaccurate statement in the consumer report. So the court, our argument is not that a consumer reporting agency may make any statement at once based on consent and the court may not decide that issue. Counsel, your time has expired. Thank you. Thank you. Mr. Stumlitz, I believe you have four minutes. Yes, Judge Grant, just a few points to comment on what Ms. McDonald argued for first advantage. First, I don't know about the common law, but the Fair Credit Reporting Act has been on the books for 50 years and there is no precedent whatsoever that consumers could consent or that businesses could agree to lowering the standard of maximum possible accuracy or of allowing reports to have information concerning other individuals by agreement. And if the court goes there, it will gut this consumer protection statute, which is to be construed liberally in favor of consumer protection. The issue is not what Ms. McDonald says, which is that businesses just somehow want inaccurate information or that literally want inaccurate information. All the indications are is that the users want correct information. The issue is whether allowing these disclaimers on applications, on websites, you could imagine they will be everywhere. The issue is whether that will lower the bar for consumer reporting agencies to do their work, to check all the available information, to assure the maximum level of accuracy so that when they associate a criminal record with a particular individual, they check to see if a social security number is available. In this case, it was. In Lackawanna County, they did not get those records. They checked whether a date of birth was available to exclude that person as a match. In this case, it was available, both online at the Megan's Law Registry and the criminal records. Also, its own vendor, Experian, had the date of birth, but it wasn't used to exclude Mr. Erickson, nor was it even placed on the report. So Little League could take a look and be able to exclude him. Let me ask you a question on what you just said. Little League comes to first advantage and we are not asking you to go any further. If we want to go further, we will just do a names only search for sex offenders. What should first advantage have done when Little League came and commissioned them to do that and no more? Was first advantage obliged to do more because of the advantage wanted to comply or wish to comply with the Fair Credit Reporting Act of assuring maximum possible accuracy? It did not have to take on that assignment. It could say, Little League came to them and said, we want you to do this and only this, no more. If the name comes up positive, we will on our own explore it further. This is all we're commissioning you to do. Were they obliged under the Act, they first advantage to say, no, we will not do that limited inquiry because of the nature of the information? Are we going to go further? Bear with me a second. We will either go further or we will not take the commission to do this at all. Is that what they were obliged to do under the statute? I think the answer to that question is yes, in a word, Your Honor. The statute does not require first advantage to take on any commission from Little League or any customer. Certainly, the customer cannot dictate the terms of the statute. What if Little League had said, we want to know if there are any sex offenders by the name of Job Smith? And first advantage produced a list of such sex offenders. Are they allowed to do that? Your Honor, this court in the Yang decision made a decision that was binding on the district below. First advantage is preparing consumer reports for eligibility purposes. Consumer reports are about an individual, in this case, Mr. Erickson, and it was about his eligibility to coach Little League. I think that transaction is clearly covered by the law we're talking about here today. If it's just a list of random names, unassociated with any one individual applying for a particular job or a particular position, then I don't know. I can't comment. I don't believe that the Fair Credit Reporting Act section that we're talking about here would be implicated. But the point here, and it is a very important point, is that it's not a question of what the customer wants or even whether the customer has a legitimate need for wanting to cast a wider net, is how first advantage puts it in its brief. The issue is whether, as a consumer reporting agency, whether the agency has the statutory responsibility to assure the maximum level of accuracy, because this information is explosive. It is indicating that someone is a sex offender, and once the horse is out of the barn, there's no way to put it back in. Let me just follow up, if I can, on my question. Help me know what it is textually in this statute that would have put first advantage on notice that it had to do more, that it could not simply rely on a names-only search when that is what it was commissioned to do by Little League. What is there in the statute that says specifically or that might reasonably be taken as requiring them to do more? Just point me to the line. You're honoring the statutory provision and issue here. I would point you to the word concerning the individual and also to the word maximum, maximum possible accuracy. But reasonable is also in that. I mean, it's not just maximum possible accuracy. Reasonable is strung together in the same phrase. To be sure, Your Honor, whether procedures are reasonable is always a jury question. What first advantage would be guided by it? We have to do a report about an individual. They know that. Therefore, the parameters of information that could be on Your Honor's report have to be closed off to information that concerns you. Then once you have that information, then the next step is, are we following procedures that assure the maximum possible level of accuracy for that information? I think those two words would guide first advantage at any consumer reporting agency away from the notion that they could just put anybody's information on a consumer report and only part of that information, only based on a available information that could be used to assure maximum accuracy. Thanks very much. Thank you, Your Honors. Anything further, Judge Ackman? No, thank you. Judge Marcus? Thank you. No, thank you. All right. All right. Well, thank you, counsel. We appreciate your argument. Thank you.